IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:12-cv-00147-RLV
(5:07-cr-00050-RLV-DSC-2)

| | |
|---|---|
| ERIC WILFORD MORRISON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before the Court on consideration of Petitioner's pro se Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. § 2255, and the Government's Response in Opposition. For the reasons that follow, Petitioner's § 2255 Motion will be dismissed.

I.   Background

Petitioner was convicted by a jury in this District on one count of conspiracy to possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and he was sentenced to a term of 324-months' imprisonment and his judgment was affirmed on appeal in a per curiam opinion. See United States v. Morrison, 439 F. App'x 270 (4th Cir. 2011) (unpublished). (5:12-cv-00147, Doc. No. 78: Superseding Indictment; Doc. No. 297: Jury Verdict). After his judgment became final, Petitioner filed the instant § 2255 motion to vacate in which he raises several claims of ineffective assistance of counsel that will be addressed herein.[1]

---

[1] Citations to documents in the record are to the page numbers generated by the ECF filing system which are located in the bottom footer of the document.

1

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the effective assistance of counsel to assist in his defense. U.S. Const. amend. VI. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a

reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

  A. Ground One

Petitioner first argues that his trial counsel was ineffective in failing to challenge the indictment based on double jeopardy grounds. (5:12-CV-00147, Doc. No. 1 at 4, 18).

The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause "protects against multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165 (1977) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). Where a defendant complains about "successive prosecutions, double jeopardy serves the additional purpose of providing criminal defendants with a measure of finality and repose." United States v. Ragins, 840 F.2d 1184, 1188 (4th Cir. 1988) (internal citations omitted). "In this aspect, double jeopardy guarantees that an accused who has once stood the ordeal of criminal prosecution to judgment – whether of conviction or acquittal – shall not be required to 'run the gauntlet' of trial again for the same alleged misconduct." Id. (quoting Green v. United States, 355 U.S. 184, 187-90 (1957)).

In Ragins, the Fourth Circuit espoused a flexible test to determine if successive

prosecutions are for the same offense, with the focus trained "not on the formal elements of the two offenses but rather on the proof actually utilized to establish them. Under this 'same evidence' test, the second prosecution is barred by double jeopardy if the evidence actually used to prosecute the first offense would suffice to convict of the second offense as charged." Id. (internal citations omitted). In considering whether there is an actionable claim for successive prosecution for conspiracy the Court considers five factors: "(1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as co-conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated." Id. at 1188-89 (citing United States MacDougall, 790 F.2d 1135, 1144 (4th Cir. 1986)).

In Petitioner's superseding indictment, the grand jury alleged that from in or about January 1998 until February 26, 2008, Petitioner and others conspired to possess with intent to distribute cocaine and cocaine base within the Western District. (5:07-cr-00050, Doc. No. 78: Superseding Indictment) ("2008 Indictment"). Petitioner contends a previous indictment returned by the grand jury in this District charged similar conduct – conspiracy to possess with intent to distribute cocaine and cocaine base from in or about February 1997 until August 7, 2000 – and that his conviction on the conduct charged in the 2008 indictment violated Double Jeopardy because he was convicted of the same or similar conduct as was charged in the 2000 Indictment. See (5:00-cr-00013, Doc. No. 12: Superseding Indictment).[2]

---

[2] In the 2000 Indictment, Petitioner was the sole defendant charged and he pled guilty pursuant to a plea agreement

4

Under the approach in Ragins, as is pertinent here, the focus is on the overt acts that were allegedly committed in furtherance of the two charged conspiracies. See Ragins, 840 F.2d at 1188-89. At Petitioner's trial on the 2008 Indictment, the testimony demonstrated that the conduct for which the jury held Petitioner responsible took place long after August 2000, accordingly, testimony regarding drug activity that occurred after August 2000 necessarily could not violate Petitioner's right to be free from double jeopardy. Moreover, Petitioner was incarcerated following his conviction on the conduct charged in the 2000 Indictment and he was not released until July 16, 2004, and the testimony demonstrated that he did not assume his role in the conspiracy, which was then well under way at the time of his release, until after he began his supervised release in 2004. See (5:07-cr-00050, Doc. No. 437: Presentence Report ¶ 45). Indeed, in his Presentence Report, the probation officer expressly limited the calculation of Petitioner's drug quantities to activity that occurred after his release in 2004. (Id. ¶ 16). For the reasons stated, the Court finds that Petitioner's claim of ineffective assistance of counsel is without merit as any challenge on double jeopardy grounds would have been baseless.[3]

B.     Ground Two

Petitioner next challenges his trial counsel's failure to challenge the drug quantities that were attributable to him at sentencing. (5:12-cv-00147, Doc. No. 1 at 5, 23). This argument is without merit.

In Petitioner's Presentence Report, the probation officer found that that the Government's

---

and he was sentenced to a term of 120-months' imprisonment and he did not appeal. (Id., Doc. No. 18: Judgment).
[3] Petitioner's trial counsel, Angela Gates, noted in an affidavit filed by the Government with its response to Petitioner's § 2255 motion, that all of the events that were alleged in the 2008 Indictment were alleged to have occurred after Petitioner was released from prison in 2004. Ms. Gates explains that based on this fact, "no double jeopardy challenge could have been made by my reasoning." (5:12-cv-00147, Doc. No. 9-3: Gates Aff. ¶ 4).

5

evidence – which included testimony from co-conspirators and law enforcement – demonstrated that Petitioner was accountable for 22.91 kilograms of crack cocaine and 5.5 kilograms of cocaine powder because these drug amounts were reasonably foreseeable to Petitioner during his participation in the conspiracy. (5:07-cr-00050, Doc. No. 437: Presentence Report ¶ 16). See U.S. Sentencing Guidelines Manual (USSG) § 1B1.3 (2009). See also United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994) (citing USSG § 1B1.3 and explaining that a "defendant should be held accountable for the conduct of others that was both in furtherance of the conspiracy and reasonably foreseeable in connection with the conspiracy.").

For sentencing purposes, the Government is charged with establishing the quantity of the drugs by a preponderance of the evidence. See United States v. Brooks, 524 F.3d 549, 560 n.20 (4th Cir. 2008). Here, Petitioner's argument fails because this Court presided over his seven-day trial and heard testimony from numerous members of the conspiracy that detailed their own involvement and that of Petitioner in the conspiracy, and the Court also heard testimony from law enforcement regarding the drug amounts at issue. And during sentencing, the Court found that this testimony supported the drug amounts that were included in his Presentence Report. Accordingly, any challenge raised by Petitioner's trial counsel regarding drug quantity would have failed.

    C.    Ground Three

On the day of jury selection, the Government filed notice of its intention to seek enhanced penalties pursuant to 21 U.S.C. § 851 based on a prior felony drug conviction. This statutory provisions provides that a person is not subject to an enhanced sentence based on a prior drug conviction "unless before trial, or before entry of a plea of guilty, the United States

attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." Id. § 851(a).[4]

Petitioner contends that his counsel failed to inform him "of the ramifications and counsel did not object to the filing in violation of strict compliance with the service of this enhancement." Petitioner's feigned ignorance of the possibility of a § 851 notice or its potential impact on his sentence is unavailing. (5:12-cv-00147, Doc. No. 1 at 7, 27).

On February 19, 2008, Petitioner appeared with appointed counsel before U.S. Magistrate Judge Carl Horn and he was advised of the elements of the drug conspiracy charged in his superseding indictment and he was informed that he faced a potential mandatory minimum term of 20-years in prison if he had a prior drug conviction and he was convicted on the instant charge. (5:07-cr-00050, FTR Recording, 2:38:24-2:38:36 p.m., Feb. 19, 2008). Accordingly, his present contention rings hollow as he was made aware some fifteen months before the Government filed the § 851 notice. Moreover, Petitioner's sentence was not based on the 20-year mandatory minimum, but rather on his Guidelines range of 324-405 months which was calculated using a total offense level of 38 and criminal history category of IV.

Petitioner's argument regarding the timeliness of the § 851 notice fares no better. First, as just noted, Petitioner was not sentenced based on the mandatory minimum term of imprisonment. Secondly, one of the reasons for the advanced notice is to provide the defendant with the opportunity to challenge the validity of the prior conviction. See United States v. Campbell, 980

---

[4] Petitioner does not dispute that he was convicted in 2001 of conspiracy to possess with intent to distribute cocaine and cocaine base in 2001. See (5:07-CR-00050, Doc. No. 437: Presentence Report ¶ 45).

7

F.2d 245, 252 (4th Cir. 1992) (internal citation omitted). During Petitioner's sentencing hearing Petitioner confirmed the validity of his 2001 conviction thus he cannot reasonably claim that he could have raised a challenge to the conviction prior to trial. (5:07-cr-00050, Doc. No. 472: Sentencing Tr. at 4-5).

Finally, although the jury was selected on the same day that the Government filed the § 851 notice, testimony did not begin until May 13, 2009, which was eight days later therefore Petitioner, who had already been made aware of the 20-year mandatory minimum during arraignment, had sufficient time to weigh his options of whether to proceed to trial or pursue a plea offer. Furthermore, as the Fourth Circuit has noted, the "term 'before trial' is surely ambiguous." United States v. Beasley, 495 F.3d 142, 149 (4th Cir. 2007) (rejecting challenge that notice must be filed before jury selection begins). In Beasley, the Government filed a § 851 notice after the jury was selected but before they were sworn in. In rejecting the defendant's challenge to the timing of the notice, the Court noted that there was no Supreme Court precedent or Circuit precedent addressing this issue therefore the filing of a § 851 notice after jury selection commenced was not plain error. In Petitioner's case, the Court finds that Petitioner's counsel was not ineffective in failing to object to the timing of the notice when no controlling law could have prompted her to do otherwise.

D.   Ground Four

In this final claim, Petitioner contends that he received ineffective assistance of counsel during the pretrial phase of his criminal proceeding, particularly with respect to the plea process. (5:12-cv-00147, Doc. No. 1 at 8, 32).

In his initial appearance the magistrate judge found that Petitioner qualified for court-

appointed counsel based on his indigent status and Andrew Murray was appointed. Petitioner explains that Mr. Murray presented him with a written plea agreement but Petitioner chose to reject the agreement because he did not have sufficient time to consider the terms of the agreement and because he planned to hire counsel. (5:12-cv-00147, Doc. No. 1 at 40; Doc. No. 1-1: Petitioner's Aff. ¶¶ 1-3). (5:07-cr-00050, Doc. No. 43: Order of Appointment). On October 9, 2008, the magistrate judge held an inquiry into the status of Petitioner's counsel and Petitioner indicated that he was planning to hire counsel, but that he wished for Mr. Murray to remain as counsel until such time as he could hire an attorney. On November 10, 2008, attorney John Feiner from California made a general appearance as Petitioner's counsel and attorney Angela Gates, who worked with Mr. Feiner in California, later made a general appearance for Petitioner. (Id., Doc. Nos., 209, 271).

In this collateral proceeding, Petitioner alleges that Mr. Feiner failed to inform him of the strength of the Government's evidence and that he failed to inform him of a written plea offer from the Government, therefore Petitioner was not able to decide whether he should accept or reject the plea offer.[5] (5:12-cv-00147, Doc. No. 1 at 32). Petitioner also complains that he was not advised by Feiner or Gates about the possibility that the Government might file a § 851 notice and further that his counsel failed to advise him of the possibility of a sentencing enhancement based on the § 851 notice. Petitioner further complains that neither Feiner nor Gates explained to him that evidence of the drug quantities that were attributable to him would be relevant to the calculation of his Guideline range. Finally, Petitioner claims that Feiner was

---

[5] Petitioner renews his claim that counsel should have raised a double jeopardy challenge. This argument will be rejected for the reasons previously stated.

ineffective because he failed to assist Gates, who tried Petitioner's case, in Feiner's absence.[6] In sum, Petitioner explains that he would have accepted the offer (if conveyed by Feiner) if he had (1) been advised about the strength of the Government's case, (2) advised about the § 851 notice and its attendant consequences upon conviction, and (3) informed that evidence of the drug quantities would be utilized in calculating his sentence. (Id. ¶ 10).

The Government obtained an affidavit from Feiner and Gates which was filed along with its response to Petitioner's § 2255 motion. In the Gates affidavit, she avers that she was informed of the possibility of the filing of a § 851 notice by AUSA O'Malley just prior to trial. Ms. Gates expressed doubt that the notice could be filed so close to trial and she informed Petitioner of the possibility of the 851 notice and explained that it would increase his mandatory minimum from 10 years to 20 years because of his prior drug conviction. Ms. Gates recalls that Petitioner became angry after learning about the possible § 851 notice and its consequences, and he urged her to find a way to prevent the Government from filing the notice. Ms. Gates asked AUSA O'Malley if he would agree to forego filing the § 851 notice but he refused the offer. After researching the issue of filing the notice that close to trial, Gates concluded that a challenge to the filing was not "well founded" based on her research and discussions with local attorneys in this District. (Id., Doc. No. 9-3: Gates Aff. ¶ 6). Ms. Gates continues by noting that she and Petitioner discussed the Government's evidence in "great detail," including evidence of the drug quantities, and Petitioner actively participated in gathering evidence and defense witnesses. Ms. Gates observes that she had no discussions regarding a plea with Petitioner nor did she believe

---

[6] This argument will be rejected because it is conclusory and based on this Court's observation of Gates' able performance during his trial. In short, Petitioner cannot demonstrate that Feiner's absence or lack of preparation time with Gates prejudiced his defense.

10

there was any plea agreement on offer from the Government and that she was only brought in to try Petitioner's case. Finally, Gates notes that Petitioner was not sentenced based on the mandatory minimum rather he was sentenced based on the drug quantities and his criminal history as calculated under the Guidelines. (Id. ¶ 7).

In Feiner's affidavit, he notes that in his first meeting with Petitioner, they discussed the allegations in the indictment and the content of the Government's discovery and the possibility of whether or not to pursue a plea deal. In a second meeting with Petitioner, Feiner avers that he discussed "the strength of the government's evidence" and "the inevitability of an 851 enhancement, the impact of the drug quantities . . . and Mr. Morrison's cooperation to receive a reduced sentence." (Id., Doc. No. 9-2: Feiner Aff.). According to the affidavit, Mr. Feiner met with AUSA O'Malley and they discussed Petitioner's Guideline calculation, the fact that the Government was planning on filing a § 851 notice, and the Government's offer of a 17-year, reduced sentence in exchange for Petitioner's guilty plea. Mr. Feiner met with Petitioner for their third meeting after talking with O'Malley and informed him of the plea offer, however Petitioner rejected the offer because the "crack allegations were supposedly false." Feiner then explained to Petitioner "that there was a sufficient quantity of powder to earn him the same guideline sentence." Feiner avers that Petitioiner acknowledged that he understood the potential sentence but he nevertheless refused to accept the plea offer. (Id. ¶ 6). In an affidavit submitted in reply to the evidence presented by the Government, Petitioner avers that he and Feiner "never discussed any term of a plea agreement that was extended to me by the government, especially one that exposed me to" a sentence of 17-years in exchange for a guilty plea. (Id., Doc. 11-3: Petitioner's Aff. ¶ 2).

After closely examining the record in this matter, the Court ordered an evidentiary hearing pursuant to 28 U.S.C. § 2255(b) and Rule 8 of the Rules Governing Section 2255 Proceedings. The Court noted that the affidavits of Feiner and Gates were at odds with the affidavits filed by Petitioner, particularly on the issues of whether: (1) Feiner ever communicated a plea offer of 17-years to Petitioner; (2) whether Feiner informed Petitioner about the possibility of an § 851 enhancement and its effect on his sentence; and (3) whether Petitioner would have pled guilty if offered the 17-year deal and if he had been properly informed about the impact of the § 851 notice. (Id., Doc. No. 14: Order for Evidentiary Hearing).[7] Counsel was appointed for Petitioner and the evidentiary hearing was held on September 30, 2015. Petitioner was present with his attorney, Christopher Shella, and Petitioner testified. Mr. Feiner testified via a live feed from California based on the parties' stipulation.[8]

1. Petitioner's testimony

During his testimony, Petitioner explains that during a bond hearing, Mr. Murray showed him a written plea offer that would have exposed him to a term of 17-years imprisonment in exchange for his guilty plea, but Petitioner rejected the deal because, as noted above, Petitioner did not believe that he had sufficient time to examine the deal and he was planning to hire a new attorney.[9] After Petitioner hired Mr. Feiner they met and Petitioner asked him whether there was still a 17-year offer on the table and Feiner explained that the Government would not renew the 17-year deal because Petitioner's "proffer" to investigators and the Government was not

---

[7] The Court found in this Order that the remaining issues presented by Petitioner could be resolved without an evidentiary hearing.
[8] The video streaming froze shortly into Mr. Feiner's testimony but the audio was unaffected and the parties agreed to proceed with Feiner's testimony.
[9] The Court agreed that Mr. Feiner should be sequestered during Petitioner's testimony and his audio feed was turned off during the testimony.

12

matching up with the Government's evidence. In particular, AUSA O'Malley explained that Petitioner's statements in his proffer were different from the statements given by his co-defendants. Based on the Government's refusal to extend a plea offer, Feiner explained during this initial meeting and in at least one subsequent meeting, that Petitioner had no choice but to go to trial.

Petitioner testified that he met with Ms. Gates one or two times prior to trial for a total of 30-40 minutes and Petitioner states that he asked her on two occasions whether there was any possibility of pursuing the 17-year offer prior to trial and Gates responded that there was no plea offer from the Government. Petitioner admits that he knew that the Government filed the § 851 notice on the day of jury selection, and he noted that he was aware that it affected his case. However, Petitioner testified that he had no idea prior to trial that a § 851 notice might be filed and he states that he and Feiner never discussed a § 851 notice or its implications.

On cross-examination by the Government, Petitioner admitted that he had an extensive criminal history, and he acknowledged his guilty plea in 2000 to the federal drug conspiracy charge, and Petitioner expressed that he understood how the federal system operated with respect to a defendant that is inclined to plead guilty. Petitioner also admitted that he knew that the filing of a § 851 notice could result in an enhanced sentence, and he affirmed that he was informed by Feiner that the 17-year plea offer would not be renewed because the information that he was providing to the investigators and the Government was at odds with the Government's evidence.

The Government highlighted the inconsistencies in Petitioner's affidavits and his testimony during the evidentiary hearing. For instance, in his affidavit Petitioner stated that he met with Feiner on three occasions prior to trial, and did not see him again until after he was

convicted and that during their pretrial meetings, Feiner never discussed any type of plea agreement from the Government, let alone a 17-year offer in exchange for his guilty plea. (Id., Doc. No. 11-3: Petitioner's Aff. ¶ 2). Yet the Government noted that in his testimony, Petitioner averred that he asked Feiner about the possibility of pursuing the 17-year deal and Feiner responded that the deal was off the table because Petitioner had provided information that the Government found was at odds with the evidence.

2. Feiner's testimony

In the mid-1970s, Mr. Feiner attended law school at UCLA and served as an AUSA from 1985 to 1990, and then began private criminal defense work after leaving the U.S. Attorney's Office. Feiner practiced for a total of thirty-three years until he was suspended in 2012, and later disbarred, by the California State Bar because he could not comply with an order to refund fees that were paid by clients.[10]

As discussed above, Petitioner decided to discharge Mr. Murray and he eventually hired Feiner and they executed a fee agreement which provided that Petitioner would pay Feiner $50,000, which included witness and other related expenses, and that this fee was considered fully earned regardless of the outcome of Petitioner's case, that is, the fee would be considered

---

[10] Feiner explained that he advertised his legal services through a website that was maintained by Esquire marketing and that the owner of the website had apparently embezzled client fees from other attorneys that advertised on the website, but that the owner had not stolen client funds from him. The State Bar began an investigation after receiving complaints and the Bar concluded that each attorney that advertised on the website and accepted client funds should be enjoined from further solicitation through the website and that all attorneys that used the site must return the client funds. Feiner and the other attorneys were required to file a report that certified that the client funds had been returned, but Feiner did not have the money to repay the clients and he failed to file the report and was disbarred.

The Court finds that his conduct, while regrettable, has no impact on Feiner's credibility as a witness for, among other reasons, Feiner's representation of Petitioner ended on or about November 15, 2010, after Petitioner's sentencing hearing.

earned in the event Petitioner chose to plead guilty or if he was found guilty after trial.

Feiner testified that he met with Petitioner on four occasions prior to trial and one time after trial to discuss the presentence report. During his first meeting with AUSA O'Malley, Feiner was informed that the Government was prepared to offer a plea that would entail 17.5 years in exchange for Petitioner's guilty plea although the agreement was not reduced to writing. There was no discussion about a § 851 notice at that time. Feiner communicated the offer to Petitioner while he was detained in the Mecklenburg County jail, but Petitioner refused the offer after complaining that the indictment charged him with trafficking in crack cocaine and he denied the charge and was unwilling to admit to the conduct.

Feiner met with O'Malley a second time, and he informed Feiner that if Petitioner chose to go to trial then he would file a § 851 notice, but if Petitioner agreed to plead guilty, accept a sentence of 17.5 years, and cooperate with the Government, then he may be able to qualify for a sentencing reduction for substantial assistance and no § 851 notice would be filed. Feiner met with Petitioner soon after this oral offer was made and communicated the terms of the offer to Petitioner. Feiner testified that he specifically explained the fact that the Government would file the § 851 notice if Petitioner elected to proceed to trial and that he explained the § 851 enhancement would subject him to a mandatory minimum term of 20 years. In addition, Feiner testified that he informed Petitioner that based on his review of the discovery, if the Government were able to prove the drug amounts that were alleged by the witnesses, Petitioner would be facing a sentence in excess of the mandatory minimum under the Guidelines and if he did not accept the Government's terms and plead guilty, then he certainly would be facing a sentence in excess of 17.5 years.

15

During this second meeting, Feiner also discussed his review of the Government's discovery and he testified that he informed Petitioner that the Government had a really strong case against him. Feiner testified that he explained to Petitioner that there were numerous cooperating witnesses that were prepared to testify to his involvement in the conspiracy, including testimony that Petitioner was observed cooking crack cocaine and trafficking the crack. Feiner testified that he told Petitioner that based on the amount of cocaine that was identified in discovery that he would face in excess of 20 years notwithstanding the amount of crack cocaine at issue. Feiner advised Petitioner that his review of discovery left him with the opinion that Petitioner was unlikely to prevail at trial. Despite this information, Petitioner expressed that he was still determined to go to trial even though Feiner informed him that it was in his best interest to agree to cooperate, to plead guilty, and thereby avoid the § 851 enhancement. In all, Feiner testified that he discussed the possibility of the 17.5 year deal with Petitioner on three separate occasions and each time Petitioner denied that he cooked or trafficked crack cocaine and he would not agree to plead guilty.

On cross-examination, Feiner stated that Petitioner's case was the only federal case that he had handled in this District, but that he had read the local rules and he was familiar with the federal system based both on his experience he gained while serving as an AUSA and the experience that he gained in his criminal defense practice in other federal districts. Feiner testified that AUSA O'Malley informed him that the plea offer would be revoked if Petitioner did not accept it in a timely fashion and that it was in fact revoked after Petitioner declined the offer for the third time. When Feiner was asked if he was aware that enforceable plea agreements are reduced to writing in this District and filed with the court, Feiner averred that he understood

that was the procedure in every federal district and that the plea offer from O'Malley was in the spirit of negotiation and that a written offer would be conveyed if Petitioner agreed to the terms that were presented by O'Malley. Feiner also testified that he reviewed the Government's discovery, which he maintained in a five and a half inch binder which he took to a meeting with Petitioner. During the meeting, Feiner testified that he discussed the contents with Petitioner and Feiner explained more particularly that he discussed the likely testimony of the Government's witnesses.

        3.        Findings of Fact

The two-part test in Strickland v. Washington applies to ineffective assistance of counsel claims arising out of the plea-bargaining process. See, e.g., Missouri v. Frye, 132 S. Ct. 1399, 1386-87 (2012) ("This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."); Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012); Hill v. Lockhart, 474 U.S. 52, 58 (1985).

In Petitioner's case, the Court finds Mr. Feiner's testimony credible that he communicated to Petitioner on three occasions the oral offer made by AUSA O'Malley which involved a term of 17.5 years in prison and that on at least one occasion Feiner informed Petitioner that he could get the 17.5 years if he agreed to enter his guilty plea and cooperate with the Government. Petitioner rejected the offer each time and maintained that he was not guilty of cooking or trafficking in crack cocaine. The Court also finds credible the testimony that (1) Feiner discussed the Government's intention to file a § 851 notice with Petitioner in the event that he elected to proceed to trial and that he notified Petitioner that the § 851 notice subjected

17

him to no less than 20-years if he was convicted, and (2) that Feiner discussed the impact of the drug quantities on Petitioner's sentence.

In his testimony, Petitioner confirms that he and Feiner discussed the possibility of reviving the 17-year offer that Mr. Murray presented to him, and he testified that Feiner stated that it was no longer on the table because Petitioner's proffer to the Government was fatally at odds with the statements of the co-defendants and other evidence. The Court finds Petitioner's testimony is not credible that Feiner did not inform him that there was in fact an oral offer from the Government. The Court finds that Petitioner's testimony regarding the § 851 enhancement is not believable. Again, an attorney with Mr. Feiner's experience would, as he solemnly and convincingly testified to during the hearing, inform Petitioner that the Government had declared that if he did not plead guilty then it would seek enhanced penalties pursuant to § 851.

Petitioner's allegations in his written submission in this proceeding and his testimony during the evidentiary hearing are starkly at odds with the record in this matter, and the Court finds that the testimony presented by the Government demonstrates that Petitioner had multiple opportunities to accept the Government's 17.5 year offer which involved his cooperation in the ongoing investigation and his plea of guilty. Instead of embracing this opportunity, the evidence shows that Petitioner rejected the offer and chose to proceed to trial with full knowledge that the Government would seek enhanced penalties under § 851 and that the drug quantities at issue could likewise subject him to an enhanced sentence.

Based on the foregoing, the Court finds that Petitioner's claim of ineffective assistance of counsel is without merit and it will be dismissed.

IV. CONCLUSION

After having considered the record in this matter, the Court finds that Petitioner's claims in this collateral proceeding are without merit and the § 2255 motion will be dismissed.

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is **DISMISSED**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is respectfully directed to close this civil case.

**SO ORDERED.**

Signed: October 21, 2015

Richard L. Voorhees
United States District Judge